# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50165 | **DATE** | 8/24/2012 |
| **CASE TITLE** | NECA-IBEW Rockford Local 364 Health & Welfare Fund vs. A & A Drug Co. | | |

**DOCKET ENTRY TEXT:**

Defendant's amended motion to dismiss [39] is granted. This matter is dismissed without prejudice for improper venue.

*Philip G. Reinhard*

■[ For further details see text below.]  Electronic Notices.

## STATEMENT- OPINION

    Plaintiff, NECA-IBEW Rockford Local 364 Health & Welfare Fund, (a trust whose trustees are all citizens of Illinois) brings this action against defendant, A & A Drug Co. a Nebraska corporation with its principal place of business in Nebraska alleging breach of contract (Count I), common law fraud (Count II), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III), negligent misrepresentation (Count IV), and unjust enrichment (Count V). The amount in controversy exceeds $75,000. Subject matter jurisdiction is premised on diversity. 28 U.S.C. § 1332 (a) (1). Defendant moves to dismiss for improper venue claiming it's contract with plaintiff compels arbitration of plaintiff's claim in the District of Columbia.

    "A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002). If the court "determines that the making of the arbitration agreement is seriously disputed" then the court must proceed to a trial on the issue. Id. "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement" in order to avoid arbitration. Id. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right of arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." Id. As with summary judgment, the evidence of the non-movant is taken as true and all reasonable inferences are drawn in the non-movant's favor. Id.

    Plaintiff contends the contract governing the relationship is the Sav-Rx Prescription Services Pharmacy Benefits Agreement effective January 1, 2003 ("Original Agreement"). The Original Agreement was not signed by the parties but plaintiff maintains it was ratified by plaintiff's board of trustees. It does not contain an arbitration provision. Defendant argues the contract governing the relationship is the Sav-Rx Electrical Industry Pharmaceutical Services Agreement between defendant and the International Brotherhood of Electrical Workers ("IBEW") dated as of March, 2003 ("IBEW Agreement") as subsequently revised from time to time. The IBEW Agreement was executed by defendant and by the IBEW but not by plaintiff.

**STATEMENT**- OPINION

Section 11.06 of the IBEW Agreement requires disputes to be resolved by "binding arbitration pursuant to the commercial rules and regulations of AAA District of Columbia office for the resolution of commercial disputes." Section 2.02 of the IBEW Agreement provides that [e]ach Sponsor shall execute a Participation Agreement that shall bind the Sponsor to the Electrical Industry Agreement." Plaintiff, as a multi-employer trust fund was eligible to be a sponsor under the IBEW Agreement by executing a participation agreement. Plaintiff did not execute a participation agreement.

"[A] party may, by his acts and conduct, assent to contract terms and become bound by them even though he has not signed the contract, if it is clear that his conduct relates to the specific contract in question." All American Roofing, Inc. v. Zurich American Ins. Co., 934 N.E.2d 679, 693 (Ill. App. 2010). Defendant argues plaintiff's conduct clearly shows the parties were operating under the IBEW Agreement. Defendant maintains plaintiff accepted rebates and lower prices and received annual independent performance reviews that measured performance by defendant against the IBEW Agreements performance standards– all of which were provided for in the IBEW Agreement but not the Original Agreement.

A review of the documents reveals defendant is correct. The IBEW Agreement provided for annual independent performance reviews. The audits were performed by Seagal at first and in later years by Cheiron. In a November 14, 2008 letter to plaintiff's trustees, plaintiff's administrative manager stated "[a]s you may know, the Sav-Rx agreement with [plaintiff] to administer the pharmacy benefits provides for an annual independent review. Attached is the review that was provided by Cherion [sic]." The letter goes on to state defendant "actually saved [plaintiff] four thousand five hundred eleven dollars ($4,511) more than the contractual financial performance guarantees." In a July 16, 2007 letter to defendant, Susan Harkness, plaintiff's health care/eligibility department supervisor, asked defendant to reimburse plaintiff for defendant's under performance in the amount of $5,919 based on the independent annual review. The Original Agreement did not contain any provisions concerning independent reviews nor did it contain any performance guarantee. The IBEW Agreement provides both.

On April 25, 2003, defendant sent Thomas Eschen, plaintiff's president at the time, a copy of the IBEW Agreement along with a letter confirming to Mr. Eschen that "the rates for your group were backdated to 4/1/03." According to the deposition testimony of Christy Lynn Piti, she had a conversation with Mr. Eschen at defendant's booth at the IBEW construction conference where the IBEW Agreement was announced to the general assembly. She testified Mr. Eschen "wanted to have a copy of the agreement. He wanted to make sure that the rates were backdated to 4/1; that he was going to be a part of this plan." Plaintiff understood that the better rates came with the IBEW Agreement, received a copy of the IBEW Agreement, and had an opportunity to learn the full contents of that agreement.

Plaintiff does not dispute it received the more favorable pricing provided by the IBEW Agreement over the Original Agreement nor that it received rebates which the IBEW Agreement provided but the Original Agreement did not. Plaintiff's argument is that the Original Agreement did not prohibit defendant from giving them better prices so the better pricing is consistent with the Original Agreement. However, the specific benefits granted plaintiff were those set forth in the IBEW Agreement. This activity is consistent with the IBEW Agreement being the one the parties were following.

Plaintiff also argues the Original Agreement, though unexecuted, controls because plaintiff's board of trustees ratified the Original Agreement but not the IBEW Agreement. But the evidence submitted shows plaintiff's trustees voted to select defendant in November 2002 before it ever received a copy of the Original Agreement. The Original Agreement was not signed and no subsequent action by the trustees to "ratify" it appears in the record.

Faced with two unexecuted contracts, the parties actions show they were operating under the IBEW Agreement and not the Original Agreement.. The IBEW Agreement requires contract disputes to be resolved by arbitration. Accordingly, this matter is dismissed without prejudice for improper venue. Plaintiff must press its claims in arbitration as provided in the IBEW Agreement.

**STATEMENT**- OPINION